[Cite as *State v. Chessman*, 2012-Ohio-1427.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :     C.A. CASE NO. 24451

vs.                              :     T.C. CASE NO. 10CRB1279

STEPHANIE CHESSMAN              :     (Criminal Appeal from
                                   Municipal Court)
    Defendant-Appellant          :

. . . . . . . . .

O P I N I O N

Rendered on the 30th day of March, 2012.

. . . . . . . . .

Ryan L. Brunk, Atty. Reg. No. 0079237, 125 W. Main Street, New Lebanon, OH 45345
    Attorney for Plaintiff-Appellee

Michael Hallock, Atty. Reg. No. 0084630, P.O. Box 292017, Dayton, OH 45429
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1}   On December 9, 2010, following a bench trial, the trial court found Defendant Stephanie Chessman guilty of the offense of petty theft, R.C. 2913.02(A)(1).  Defendant was sentenced to thirty days in jail, which were suspended by the court.  She was also fined two hundred dollars, one hundred and fifty of which was also suspended, and ordered to pay costs.

The court also imposed a five-year term of community control.

**{¶ 2}** Defendant filed a timely notice of appeal from her judgment of conviction. She presents two assignments of error for review:

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY SUSTAINING APPELLANT'S CONVICTION BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO SATISFY ITS BURDEN TO PROVE EACH AND EVERY ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT.

SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL 29 MOTION TO DISMISS.

**{¶ 3}** Because they are interrelated, these assignments of error will be considered together. In *State v. Haggerty*, 2d Dist. Montgomery No. 24405, 2011-Ohio-6705, at ¶ 19-21, we wrote:

When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. *State v. Miles* (1996), 114 Ohio App.3d 738.

A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins,* (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 4} Defendant was found guilty of theft in violation of R.C. 2913.02(A)(1), which provides:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: Without the consent of the owner or person authorized to give consent.

{¶ 5} The evidence presented by the State at Defendant's trial shows that on July 19, 2010, Defendant Stephanie Chessman, her brother and co-defendant Scott Chessman, and one

or perhaps two unidentified males entered the unlocked basement of a duplex apartment building at 1925 West Main Street, New Lebanon, Ohio. Tenants of the building stored personal property in the basement. While making between eight to ten trips into and out of the basement, the group took some bags and boxes of property to their vehicle and then drove away. The group's conduct was seen by Brandy Miller, a resident of the building, who was in the basement doing laundry.

{¶ 6} The group removed no property belonging to Miller. However, they did remove property belonging to her fiancé: a positional level and a tool box. They also removed property belonging to another resident of the duplex, Cody Ridenauer. Miller contacted Ridenauer after the group left. Ridenauer came to the basement and determined that several baseball bats and gloves as well as an electric sander he kept there were gone. Ridenauer promptly called the police.

{¶ 7} The owner of the duplex, Jerry Huffman, testified that Scott Chessman had lived there from October to December of 2008. Scott Chessman also kept property in the basement, which he left there after he moved out. Huffman said that he didn't give permission to the Chessmans to enter the basement on July 19, 2010, "that I recall." (Tr. 11.) He also denied ever giving them permission at all.

{¶ 8} Robert Ridenauer testified that approximately one and one-half years after Scott Chessman moved out of the duplex, Huffman asked Ridenauer to dispose of property Scott Chessman had left in the basement. Ridenauer and a friend removed bags and boxes of Scott Chessman's property and left it at the front curb.

{¶ 9} Brandy Miller testified that on one day in 2010, the Chessmans knocked on the

door of her apartment and asked for permission to "get their stuff." (Tr. 21.) Miller told them to talk to Huffman, the landlord. Miller testified that about two weeks later, on the day the Chessmans removed Ridenauer's property from the basement, Defendant Stephanie Chessman again knocked on her door, after Scott Chessman had gone to the basement. Miller did not relate what conversation, if any, she had with Stephanie Chessman on that occasion.

{¶ 10} Neither Defendant Stephanie Chessman nor her brother and co-defendant Scott Chessman offered any testimony or other evidence at the trial.

{¶ 11} Defendant argues that the State failed to prove that she did not have the consent of the owner of the property to take or possess that property. In support of that claim, Defendant points out that the owner of the property that was taken, Cody Ridenauer, never testified that he did not give permission to Defendant, Scott Chessman, or anyone else to take or possess his property.

{¶ 12} We previously rejected this same claim in the appeal of Defendant's brother, Scott Chessman. In *State v. Chessman*, 2d Dist. Montgomery No. 24454, 2011-Ohio-4283 at ¶ 17, we stated:

> This court has previously held that although the State has an affirmative obligation to present evidence supporting every element of an offense, it is not required to present direct evidence regarding the lack of consent as long as there is sufficient evidence to permit the trier of fact to infer the lack of consent. *State v. Miller* (May 24, 1990), Montgomery App. No. 11734.

{¶ 13} Cody Ridenauer did not testify that the Chessmans lacked his permission to

take his property that they removed: baseball equipment and an electric sander. However, the fact that Ridenauer called the police to report those items of property stolen is a fact from which reasonable minds could infer that Ridenauer gave no permission to anyone, including the Chessmans, to remove his property from the basement.

{¶ 14} Defendant Stephanie Chessman further argues that the evidence was insufficient to prove the other essential element of R.C. 2913.02(A)(1): that she acted "with purpose to deprive the owner of [the] property" Defendant and the others removed from the basement. R.C. 2901.22(A) states:

> A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 15} The State responds to this argument with the assertion that "[Brandy] Miller testified that after she told the Appellant that a positional level was her fiance's[,] the Appellant or her co-defendant still stole the level." (Brief, p. 4.) That assertion is partially incorrect. Miller testified:

> Well, there was some Louisville slugger bats and there was a level on my - - the - - I guess its pronounced [sic] level, it's the yellow thing that you use to level stuff out because my fiancé used to be a construction worker.
>
> Well, I believe the man walked over and said something about that looked like his. And I put my foot on it and I said, everything over here is my old man's or my fiance's.

And I seen someone with a daw - - Dewalt drill. I don't remember if it was a guy or a girl. And they probably made ten trips up and down the steps.

(Tr. 21.)

**{¶ 16}** Miller's testimony demonstrates that her statement was addressed to Scott Chessman or another of the males with him. It does not demonstrate that Stephanie Chessman heard or was otherwise aware of Miller's statement. The court inquired of Miller whether "[t]hese people[,] whether it be three males and a female or two males and a female, they were acting together; they were talking to one another?" Miller responded; "yes sir." (Tr. 33.) The court's inquiry is indicative of the State's theory of Stephanie Chessman's criminal liability: that she was complicit in committing the theft offense in which her brother engaged. We previously affirmed her brother's conviction for petty theft. *State v. Chessman*, 2d Dist. Montgomery No. 24454, 2011-Ohio-4283.

**{¶ 17}** R.C. 2923.03(A)(2) states: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." When the degree of culpability is purposeful conduct, the aider and abettor must assist the principal with that purpose, and therefore, "must intend to aid, abet, solicit, procure, or cause the principal to commit the offense." Katz & Gianelli, Criminal Law, Baldwin's Ohio Practice (3d Ed.), Section 92:3. That requires the State to prove "that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus.

**{¶ 18}** A defendant's admitted knowledge may be used to infer purpose. *State v. Hill*, 70

Ohio St.3d 25, 635 N.E.2d 1248 (1994). In the case of a theft offense, the defendant's purpose to deprive another of his property may also be inferred from the defendant's knowledge that, because it is not owned by him, the property taken is instead owned by another. Thus, in the case of Scott Chessman, his intent to deprive the owner of the property he took may be inferred from proof that another person owned the property. The same does not necessarily apply to Stephanie Chessman.

{¶ 19} Stephanie Chessman accompanied her brother to the duplex where he formerly resided and where he had left personal property in the basement when he moved out. Two weeks before, Stephanie Chessman told Brandy Miller that Defendant and her brother had come there to "get their stuff." Miller told them to get the permission of Huffman, the owner and landlord. Huffman testified that he gave no permission to the Chessmans to enter the duplex. However, that does not demonstrate that Stephanie Chessman, when she helped her brother remove property from the basement, acted with the purpose or specific intent to deprive its owner of that property. For that purpose to be found, there must be positive evidence, direct or circumstantial, that Stephanie Chessman knew that someone other than her brother owned that property. No such evidence was offered, and the fact is not otherwise shown by the circumstances.

{¶ 20} Our duty is to determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offense of petty theft, R.C. 2913.02(A)(1), proven beyond a reasonable doubt. *State v. Jenks*. We conclude that, on this record, a rational trier of fact could speculate that it was Stephanie Chessman's purpose or specific intent to deprive the owner of the property she and

her brother took. However, for the reasons discussed above, we further conclude that the proposition does not satisfy the reasonable doubt standard. Therefore, the trial court erred when it found Stephanie Chessman guilty of petty theft.

{¶ 21} The assignments of error are sustained. Defendant's conviction for a violation of R.C. 2913.02(A)(1) will be reversed and vacated.

FAIN, J., And FROELICH, J., concur.

Copies mailed to:

Ryan L. Brunk, Esq.
Michael Hallock, Esq.
Hon. James L. Manning