[Cite as *In re R.D.H.*, 2016-Ohio-5570.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

IN THE MATTER OF:                    :        **O P I N I O N**
R.D.H., DELINQUENT CHILD

                                     :        **CASE NO. 2015-L-132**


Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2015-DL-01550.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.


{¶1}   Appellant, R.D.H., appeals his conviction for complicity to robbery and argues the state only established that he intended to commit theft.  For the following reasons, we affirm.

**{¶2}** R.D.H., a fifteen-year-old boy, agreed via social media to purchase a pair of tennis shoes and a mobile phone from Michael, a fourteen-year-old boy who knew R.D.H. through football. The shoes belonged to Michael and the phone belonged to Jason, who was thirteen at the time. R.D.H. agreed to exchange $100 cash and $400 worth of marijuana for the shoes and phone.

**{¶3}** On the day of the exchange, Michael had a football game and could not meet R.D.H. So Jason agreed to meet R.D.H. at the park. Jason had never met R.D.H. before, but had seen his Facebook photo. R.D.H. was with two others when Jason approached him. Jason's two younger siblings were with him. Jason handed R.D.H. the shoes and phone, and R.D.H. questioned whether the shoes were real. Jason suggested that they walk to a nearby McDonald's to use its Wi-Fi to contact Michael and confirm certain details about the shoes.

**{¶4}** At one point, one of the three boys told Jason to go behind a house where Jason suspected something bad was going to happen. One of the boys named Niko jumped on Jason knocking him to ground while R.D.H. and the other boy ran toward a nearby fence. R.D.H. climbed the fence and continued running. Jason got up and gave chase catching the third individual, who did not have the shoes or the phone. Jason then called the police.

**{¶5}** Within five minutes of the police dispatch, the police saw R.D.H. and Niko running. The two were stopped at gunpoint. Jason identified R.D.H. at the scene as the individual who took his phone and shoes and Niko as the person who tackled him to the ground. R.D.H. still had the shoes and phone at the time.

**{¶6}** R.D.H. initially told the police that he ran off with the items because Jason tried to punch him. Niko told the police that it was the third boy, who had not been caught, who took Jason's things.

**{¶7}** At trial R.D.H. testified that he only intended to run away with the items and not harm Jason. R.D.H. stated that Niko only learned about his plan to steal that day at the park.

**{¶8}** R.D.H. also denied telling Jason to go behind the house, but he could not recall who told Jason to go there. R.D.H. explained that although he planned to steal Jason's things, he never intended or agreed to hurt him.

**{¶9}** The complaint alleging R.D.H. to be a delinquent child contains two counts. First, R.D.H. "did knowingly aid or abet another in committing Robbery, a violation of section 2911.02 of the Revised Code" if committed by an adult. The second count alleged that R.D.H. received stolen property. The juvenile court found both counts true.

**{¶10}** Appellant's sole assigned error states:

**{¶11}** "The trial court erred to the prejudice of the delinquent child-appellant when it denied his Crim.R. 29(A) motion for judgment of acquittal, in violation of his rights to fair trial and due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution."

**{¶12}** A juvenile court may adjudicate a juvenile as a delinquent child when the evidence demonstrates beyond a reasonable doubt that the child committed an act that

would constitute a crime if committed by an adult.  R.C. 2151.35(A); Juv.R. 29(E)(4); *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶18.

{¶13} Appellate courts do not consider a witness' credibility when reviewing a sufficiency-of-the-evidence claim. *State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶27; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶79.  Instead, we determine whether the testimony and other evidence presented satisfy every element of the offense.  *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶51.

{¶14} Appellant argues acquittal was necessary because the state failed to prove beyond a reasonable doubt that he aided or abetted his co-delinquent in inflicting, attempting to inflict, or threatening to inflict physical harm on another.  Consequently, he claims the state violated his state and federal due process rights.

{¶15} A Juv.R. 29(A) motion for acquittal tests the sufficiency of the evidence and requires a trial court to issue a judgment of acquittal when the state fails to establish sufficient evidence to support a conviction.  *State v. Haggerty*, 2d Dist. Montgomery No. 24405, 2011-Ohio-6705, ¶20, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978); *In re R.A.M.*, 11th Dist. Lake No. 2010-L-011, 2010-Ohio-4198, ¶10.  Appellate courts review the denial of a motion for acquittal under the same standard for arguments asserting insufficient evidence.  *Id.*

{¶16} "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after

4

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Chessman*, 2d Dist. Montgomery No. 24451, 2012-Ohio-1427, ¶3 quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶17}** Following trial, the court found both counts of the complaint, i.e., complicity to robbery, a felony of the second degree if committed by an adult under R.C. 2923.03(A)(2) and receiving stolen property, a first-degree misdemeanor if committed by an adult under R.C. 2913.51(A), true.

**{¶18}** Appellant only challenges the mens rea aspect of his complicity to robbery offense and argues although he intended to commit theft, he did not intend to commit robbery, and the state did not prove he was complicit to his friend's robbery. Thus, viewing the evidence in a light most favorable to the prosecution, we must determine whether the state satisfied its burden.

**{¶19}** R.C. 2923.03(A) complicity states in part:

**{¶20}** "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

**{¶21}** "* * *

**{¶22}** "(2) Aid or abet another in committing the offense * * *."

**{¶23}** R.C. 2911.02 states in part:

**{¶24}** "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶25}** "* * *

**{¶26}** "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

5

**{¶27}** "(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree."

**{¶28}** In *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, the Supreme Court reversed the decision of the Seventh Appellate District and reinstated Johnson's conviction and sentence for conspiracy to commit aggravated murder. Johnson was a member of the Crips, who along with other gang members, took a caravan of stolen cars to locate and kill a rival gang member. Johnson was in the backseat with the shooter when the shooter shot and killed a three-year old girl and injured three others.

**{¶29}** Johnson argued the state failed to establish he had the requisite mental state that he intended to kill. The Supreme Court rejected this argument explaining in part,

**{¶30}** "Defendant would have this court conclude that because no witness pinpointed a specific statement by defendant of his intent to join the plan to kill * * *, there is insufficient evidence to support a conviction for complicity based on aiding and abetting. This position defies not only the law but common sense.

**{¶31}** "* * *

**{¶32}** "Defendant was not an innocent bystander who was merely along for the ride. In fact, he intended to assist with the murder * * *. We agree with the proposition that 'participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'

**{¶33}** "* * *

6

{¶34} "The fact that defendant did not articulate his intent will not allow him to escape responsibility for his clear actions of complicity by aiding and abetting in the commission of these crimes. Accordingly, we hold that to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *Such intent may be inferred from the circumstances surrounding the crime.*" (Citation omitted.) (Emphasis added.) *Id.* at 245-246.

{¶35} In *State v. White*, 12th Dist. Clinton No. CA99-09-025, 2000 Ohio App. LEXIS 5655, (Dec. 4, 2000), White challenged his convictions for aggravated robbery and petty theft arguing that the offenses occurred after he left the scene. However, the court of appeals disagreed and found the state provided sufficient evidence from which it could be inferred that White intended to rob the victim based on his participation in the assault on him minutes before. *Id.* at *5-6.

{¶36} In this case, the state's evidence confirms that R.D.H. devised a plan to steal the shoes and phone and his friend participated in his plan. One of the three boys directed Jason behind the house where he was tackled to the ground. At approximately the same time Jason was tackled, R.D.H. and the other boy began running away. R.D.H. still had possession of the items when he scaled a fence to get away from the victim. Niko then ran away and caught up to R.D.H., and the two continued to run together until they were detained by the police. The victim caught up to the third individual, who did not have possession of his stolen items, so he let him go. This third person was not with Niko and R.D.H. when they were spotted running by the police.

7

**{¶37}** After viewing the evidence in R.D.H.'s case in a light most favorable to the prosecution, we agree that the state produced sufficient evidence that could be construed as R.D.H. sharing the intent to inflict injury on their common victim. As in *Johnson* and *White*, *supra*, R.D.H.'s participation in the requisite criminal intent may be inferred from his presence, companionship, and conduct before and after the offense. Specifically, the boys acted together by walking with Jason out of the park and directing him behind a home. R.D.H. had possession of the stolen items and ran while Niko knocked the victim to the ground. The assault provided R.D.H. the opportunity to get away. Thereafter, the two were found running from the scene together.

**{¶38}** Based on the foregoing, R.D.H.'s sole assignment of error lacks merit, and the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

CYNTHIA WESTCOTT RICE, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

8