JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Eric Smith appeals his murder conviction and assigns the following errors for our review:
 "I. Whether the trial court erred in allowing evidence of the appellant's post arrest statements to be considered as evidence in violation of Miranda v. Arizona, 384 U.S. 436
(1966)."
 "II. Whether the appellant was deprived of effective assistance of counsel at trial."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Smith's conviction. The apposite facts follow.
 {¶ 3} On September 21, 2006, the Cuyahoga County Grand Jury indicted Smith on one count of aggravated murder with firearm specification attached. Smith pleaded not guilty at his arraignment and a series of pre-trials followed. On August 14, 2007, a jury trial commenced.
 Jury Trial {¶ 4} At trial, the evidence presented, through fourteen witnesses, established that at approximately 2:00 a.m. on August 25, 2006, the victim, Johnny Greene, drove his truck to the area of East 126th and Forest Avenue in the City of Cleveland, Ohio. At that time, Parisha Dickerson, Yusef Collier and Latasha Amison, Greene's former high school classmates, were gathered on the porch of an apartment building located at 12558 Forest Avenue. Greene parked his truck, exited and began socializing with his friends. *Page 4 
 {¶ 5} Parisha Dickerson testified that after the group had been talking for a few minutes, she observed Smith and another male approaching the scene on foot. Smith walked past the group without speaking, but returned and stated to Greene: "You didn't have to do that to my sister's car, we can settle this."[1] Dickerson testified that Greene started to walk towards his car, but Smith ordered him to stop.
 {¶ 6} According to Dickerson, Greene stopped, turned around and tried to diffuse the situation. Greene stated that the two men could talk about the situation, but Smith pulled a gun from his right pocket and began shooting. Smith shot Greene twice, Greene tried to run, but fell near the corner of East 126th Street.
 {¶ 7} Dickerson and the others ran into the apartment building, where she observed Greene lying on the ground with Smith standing over him. Smith stated: "What are you going to do now? What are you going to do now?"[2] Dickerson testified that Smith then proceeded to shoot Greene four more times.
 {¶ 8} When the police responded to the scene, Dickerson informed them that she had witnessed the shooting and that she knew the shooter's identity. Dickerson recognized Smith from seeing him around the neighborhood and that everybody referred to Smith as "E." *Page 5 
 {¶ 9} Dickerson's brother, Yusef Collier, and, his girlfriend, Latasha Amison, testified that they witnessed the shooting. They recognized Smith from the neighborhood and stated that Smith was wearing a white t-shirt and blue jeans at the time of the shooting.
 {¶ 10} Chanel Jernigan lived in the same apartment building with Dickerson, Collier and Amison. Jernigan had never met Greene, but saw Smith several times each day because his cousin lived next door to her. Jernigan was awakened after midnight by the sound of gunshots. She went out onto her porch from where she observed Smith shoot Greene.
 {¶ 11} Detective Joseph Chojnowski, a thirty-year veteran with the Cleveland Police Department, was the lead investigator of the case. He testified that Smith was taken into custody on September 5, 2006.
 {¶ 12} On September 8, 2006, Detective Chojnowski met with Smith. Detective Chojnowski asked Smith if he knew why he had been arrested, but before he could answer, he Mirandized Smith. After Detective Chojnowski read Smith the Miranda rights, Smith almost laughingly replied that he was in custody on a "bullshit robbery charge or it might be for riding a bicycle illegally."[3] Smith's entire demeanor changed when Detective Chojnowski informed him that he was in custody for the shooting death of Greene. Smith became very quiet, stared at the ground and *Page 6 
indicated that he needed to talk with his mother to determine whether he needed an attorney.
 {¶ 13} The police recovered nine shell casings from the scene. The county coroner established that Greene suffered nine bullet wounds, with two fatally piercing his heart.
 {¶ 14} At the close of the State's evidence, Smith argued and filed a motion for acquittal on the grounds that there was no physical evidence linking him to the crime. In addition, Smith argued that there was no evidence presented of prior calculation or design. The trial court granted Smith's motion as to prior calculation and design, thereby reducing the charge to murder.
 {¶ 15} On August 17, 2007, the jury found Smith guilty of murder with the attached firearm specification. On September 7, 2007, the trial court sentenced Smith to a prison term of fifteen years to life for the murder charge to be served consecutively to the three-year firearm specification. The trial court also sentenced Smith a prison term of seven years on an unrelated robbery charge, to be served concurrently with the murder sentence.
 Miranda Warning *Page 7 {¶ 16} In the first assigned error, Smith argues the trial court erred, in violation of Miranda v. Arizona, [4] by allowing testimony of his post-arrest statements to be entered into evidence. We disagree.
 {¶ 17} The failure to file a pretrial motion to suppress evidence pursuant to Crim. R. 12(B)(3) precludes a challenge to its admission at trial.[5] In this regard, Crim. R. 12(G) provides that:
 "Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver."
 {¶ 18} A motion to suppress is the proper vehicle for raising challenges to exclude evidence that is the product of police conduct that results in a constitutional violation.[6] A failure to timely file a motion to suppress evidence amounts to a waiver of any such issues for purposes of trial.[7]
 {¶ 19} Here, Smith did not file a motion to suppress the evidence he now alleges violated Miranda. Inasmuch as this evidence was not the subject of a timely *Page 8 
motion to suppress, any error regarding its admissibility has been waived.[8] Accordingly, we overrule the first assigned error.
 Ineffective Assistance of Counsel {¶ 20} In the second assigned error, Smith argues that he was denied the effective assistance of counsel due to defense counsel's failure to file a motion to suppress his post-arrest statements to Detective Chojnowski. We disagree.
 {¶ 21} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[9] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[10] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[11] Judicial scrutiny of a lawyer's performance must be highly deferential.[12] *Page 9 
 {¶ 22} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel.[13] Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted.[14]
Furthermore, where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.[15]
 {¶ 23} Therefore, we will review the record to determine whether Smith's statements were unlawfully obtained to determine if a motion to suppress would have been meritorious. In State v. Treesh, [16] the Supreme Court of Ohio stated: "It is well established that a defendant who is subjected to custodial interrogation must be advised of his or her Miranda rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible***."
 {¶ 24} When Detective Chojnowski met with Smith, he asked Smith if he knew why he was in custody, but before Smith could answer the question he read him the Miranda rights. However, after Smith was read his Miranda rights, he laughingly *Page 10 
replied that he was there for some "bullshit robbery charge or it might be for riding a bicycle illegally." Detective Chojnowski stated that after he told Smith that he was there for the shooting death of Greene, Smith's demeanor changed.
 {¶ 25} Detective Chojnowski testified about the remainder of the meeting as follows:
 "Q. What did he say?
 A. He says I want to talk to my mom. Q. And did you respond to that?
 A. I asked him if he wants an attorney.
 Q. Did he respond to that at that point?
 A. Yes, he did.
 Q. What did he say?
 A. He says I want to talk to my mom. She'll tell me whether I need an attorney.
 Q. Did you respond to that comment?
 A. Yes, I did.
 Q. What did you say?
 A. I asked him if he wants an attorney.
 Q. Basically did the conversation end then at that point?
 A. Yes, it did, sir."[17] *Page 11 
 {¶ 26} A review of the above excerpt, reveals that Smith was properly Mirandized. Smith gave a non-incriminating response to the detective's only question. Further, after Detective Chojnowski explained the true reason for Smith's custody, he immediately invoked his right to counsel, which implies that Smith understood his rights. Finally, the excerpt indicates that the questioning ended upon Smith's invoking his right to counsel.
 {¶ 27} Nonetheless, Smith contends that he was prejudiced by Detective Chojnowski's testimony about his changed demeanor after being informed that he was in custody for the shooting death of Greene. We are not persuaded.
 {¶ 28} Smith's changed demeanor is not a conclusive indication of guilt, but could be inferred as an acknowledgment that the situation was more serious than Smith originally thought. Morever, at trial, four eyewitness testified about the shooting. Dickerson, Collier, and Amison all testified to the unfolding events which led to Greene's death. The fourth eyewitness, Jernigan, testified that she observed Smith shooting Greene.
 {¶ 29} All four witnesses were familiar with Smith by virtue of seeing him around the neighborhood. Jernigan testified that she saw Smith approximately three or four times per day, when Smith came to visit his cousin, who lived in the adjacent apartment. *Page 12 
 {¶ 30} We conclude, given the evidence presented by the four eyewitnesses, that Smith was not prejudiced by Detective Chojnowski's testimony about Smith's changed demeanor. We also conclude that defense counsel's decision not to file a motion to suppress Smith's post-arrest statement could be viewed as trial strategy.
 {¶ 31} Actions of defense counsel which might be considered sound trial strategy are to be presumed effective.[18] A reviewing court will not second-guess trial strategy decisions.[19] Here, trial counsel might have concluded, given the forthcoming evidence of the four eyewitnesses, that filing a motion to suppress would have been futile. As such, we conclude that defense counsel was not ineffective in choosing not to file a motion to suppress Smith's post-arrest statements. Accordingly, we overrule the second assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Tr. 441.
[2] Tr. 447.
[3] Tr. 672-673.
[4] (1966), 384 U.S. 436.
[5] State v. Lapso, 5th Dist. No. 2007-COA-045,2008-Ohio-4489.
[6] State v. French, 72 Ohio St.3d 446, 1995-Ohio-32.
[7] State v. Montgomery, 5th Dist. No. 2007 CA 95,2008-Ohio-6077, citing State v. Wade (1973), 53 Ohio St.2d 182.
[8] State v. Duncan, Cuyahoga App. No. 84587, 2005-Ohio-6241.
[9] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[10] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[11] Id. at paragraph two of syllabus.
[12] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[13] State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448.
[14] State v. Lavelle, 5th Dist. No. 07 CA 130,2008-Ohio-3119.
[15] State v. Drummond (2006), 111 Ohio St.3d 14, 41, 2006-Ohio-5084, citing State v. Gibson (1980), 69 Ohio App.2d 91, 95.
[16] 90 Ohio St.3d 460, 2001-Ohio-4.
[17] Tr. 673-674.
[18] State v. Rodgers, 6th Dist. No. L-02-1089,2004-Ohio-3795, citing Strickland, supra, at 687.
[19] State v. Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, citingState v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971. *Page 1