[Cite as *State v. Robertson*, 2018-Ohio-2934.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106279

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### HERBERT O. ROBERTSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-612274-A

**BEFORE:** E.A. Gallagher, A.J., E.T. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 26, 2018

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Shannon Raley
Brandon A. Piteo
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant Herbert Robertson appeals his convictions for felonious assault following a bench trial. Robertson contends that (1) the trial court erred in admitting hearsay testimony by the investigating detective regarding statements the victim made to him, and (2) his convictions are against the manifest weight of the evidence. For the reasons that follow, we affirm the trial court's decision.

**Factual and Procedural Background**

{¶2} On December 22, 2016, a Cuyahoga County Grand Jury indicted Robertson on two counts of felonious assault (with one-year and three-year firearm specifications) and one count of having weapons while under disability in connection with the November 23, 2016 shooting of David Talley. Robertson waived his right to a jury trial and the case was tried to the bench.

{¶3} Talley, Cleveland patrol officer Carmen Messina and the detective who investigated the incident, Cleveland police detective Aaron Reese, testified on behalf of the state.

{¶4} Talley testified that during the early morning of November 23, 2016, while he was driving to a bar on St. Clair Avenue, he stopped for a red traffic signal at the intersection of East 55th Street and Quincy Avenue in Cleveland. While waiting at the light, he looked "down for a second" at his phone. When he looked up, he saw a tan Ford Explorer "shoot around me, like almost ahead of me" and that the driver began shooting at him. Talley identified Robertson — whom he knew as "Too Too" — as the shooter. Talley testified that he saw Robertson "on the passenger side of me," driving the Explorer from which the shots originated, "[l]ike right before they started." Talley testified that Robertson had a gun in his hand and that when he looked over towards him, the shots "started coming." Talley could not state whether the gun he saw was a revolver or semi-automatic. Talley testified that when the shooting started, he "balled up," then

drove away and "never looked back." Talley was shot five times — four times in his right arm and once in the right side of his abdomen. Talley testified that he did not see anyone else in the Explorer at the time of the shooting.

{¶5} Talley identified his car in police photographs taken after the incident, showing multiple bullet holes in the passenger-side doors and windows. He testified that his car had had no bullet holes prior to the incident. Talley did not see whether any shell casings had been expelled from the gun when it was fired.

{¶6} Talley testified that after he left the scene, he drove several blocks north to the intersection of East 55th Street and Euclid Avenue. He flagged down two Cleveland police officers and told them he had been shot. Talley testified that he passed out and woke up in the hospital, where he again spoke with police.

{¶7} Officer Messina testified that he and his field training officer were in a zone car, stopped at a red traffic light at the intersection of Euclid Avenue and East 55th Street, when Talley pulled up alongside them in his vehicle, screaming that he had been shot and asking for help. As the officers got out of their vehicle to assist him, Talley opened the driver's door of his vehicle and fell out of the vehicle onto the ground, "writhing in pain." Officer Messina testified that Talley had "quite a few wounds" to his right arm and a wound in his right abdomen area that was "bleeding profusely." The officers requested EMS assistance and began to administer first aid. Officer Messina testified that they asked Talley where and when the shooting had occurred and that he responded that it had "just happened" at the intersection of East 55 Street and Quincy Avenue. EMS arrived approximately ten minutes later and transported Talley to MetroHealth hospital.

{¶8} After EMS arrived, the officers inspected Talley's vehicle from the outside to see if they could see a weapon, bullet fragments or other evidence to corroborate Talley's claims. Officer Messina testified that he observed that "the vehicle had been shot up quite a few times" with numerous bullet holes in the passenger side doors and windows but that he saw little else.

{¶9} Officer Messina and his field officer interviewed Talley at the hospital. Officer Messina testified that Talley "seemed very upset," "very much in pain" and "very shut down[,] [l]ike he didn't want to talk." He testified that when the officers "finally got him to open up and talk," he "shied away * * * like he was scared." Messina testified that Talley told the officers that he was shot while he was sitting in his vehicle after a tan Ford Explorer pulled up alongside the passenger side of his vehicle at the corner of East 55th Street and Quincy Avenue. He said that the driver of the vehicle was shooting at him and that he knew him only as "Too Too."

{¶10} Detective Reese, the Cleveland police detective assigned to investigate the case, was the state's final witness. He testified that, as part of his investigation, he visited both the intersections of East 55th Street and Quincy Avenue and East 55th Street and Euclid Avenue. The detective indicated that he found no surveillance footage or any broken glass, spent shell casings, bullets or other physical evidence at either location. Detective Reese testified that, due to Talley's injuries, he was not able to speak with Talley immediately, but "followed up" and interviewed him "seven or eight days later" at Talley's sister's house. The detective testified that, during the interview, Talley "reiterated what he had told the responding officers," identifying the shooter as "Too Too," told the detective the "background story" involving Too Too and provided the detective with a photograph of Too Too.

{¶11} As to the "background story" involving Too Too, the detective testified that Talley told him that he had first met Too Too when they were both incarcerated at Big Sandy, a federal

correctional facility. Talley told the detective that Too Too told him he had been hired to kill Talley. The detective testified that Talley also told him that, a month before the shooting, he ran into Too Too at a plaza on East 79th Street. After Too Too showed Talley a firearm with an extended magazine, Talley felt "so unsafe" that he went inside a nearby cell phone store "to be sure that if anything happened to him, that it would be captured on surveillance video inside the store."

{¶12} After interviewing Talley, the detective spoke with the owner of the cell phone store Talley had mentioned. The owner indicated that he recalled Talley "being there" but that no surveillance video was available.

{¶13} Detective Reese testified that he learned the identity of Too Too after reaching out to several contacts he had at the federal probation department. He gave his contacts the relevant incarceration dates and asked if they knew anyone with the nickname "Too Too." These contacts provided the detective with Robertson's name and information. The detective reviewed Robertson's information, looked at photographs of him, compared them to the photograph he had received from Talley and determined that Too Too and Robertson were, in fact, the same person.

{¶14} Robertson was arrested, and Detective Reese interviewed him as well. The state introduced a video recording of the interview into evidence.[1] During the interview, Robertson confirmed that his nickname was "Too Too," that he knew Talley as "Hot Boy" and that he knew

---

[1] The state also introduced 36 photographs of the vehicle and the intersections at issue, a certified journal entry setting forth Robertson's prior conviction for the having weapons while under disability charge and Talley's medical records relating to the shooting. All of these exhibits were admitted into evidence without objection. The exhibits, however, were not included with the record on appeal. Sua sponte, this court ordered the parties to assist the clerk's office in locating the trial exhibits. The exhibits have not been located and submitted to this court. As such, we cannot consider the exhibits themselves in deciding the issues in this appeal but, presuming the regularity of the proceedings, may consider the testimony about them in the transcript. The following description of the information Robertson provided during his interview is based on Detective Reese's testimony— as to which there was no

Talley's brother. Robertson denied any involvement in Talley's shooting but stated that he went to the hospital after Talley had been shot. Robertson also stated that he needed money for his family and that Talley had accused him of accepting money to "put out a hit" on Talley.

{¶15} On cross-examination, defense counsel questioned Detective Reese regarding the plausibility of Talley's version of events given that no shell casings, glass or other physical evidence had been found at the scene. The detective stated these are "very busy" intersections and that this type of physical evidence is "very small" and can be moved by passing cars and pedestrians. He further testified that, depending on which direction the Explorer was traveling, i.e., whether it was traveling in the same direction as Talley's vehicle, and how the shooter was holding the gun, i.e., whether the shooter was holding the gun inside or outside the vehicle when shooting, the shell casings might not eject onto the street. He further testified that given the direction from which the bullets were fired and the fact that the window glass in the passenger side window of Talley's vehicle remained largely intact, he would have expected glass to be on the inside of Talley's vehicle rather than the street.

{¶16} The detective did not conduct any investigation relating to Robertson's cell phone to see if it could be determined where Robertson was at the time of the incident. The Explorer Talley described was never located. No gun that could be linked to the incident was found. The detective acknowledged that there was "no corroboration" that anything happened at the intersection of East 55th Street and Quincy Avenue "other than what Mr. Talley said."

{¶17} After the state rested, Robertson moved for a judgment of acquittal on all three counts. The trial court denied the motion. Robertson rested without calling any witnesses. He

---

objection.

then renewed his Crim.R. 29 motion. Once again, the trial court denied the motion. The court found Robertson guilty of all three counts.

{¶18} The two felonious assault counts merged and the one-year firearm specification merged with the three-year firearm specification. The trial court sentenced Robertson to an aggregate prison term of six years — three years on the firearm specification to be served prior to and consecutive to three years on the underlying felonious assault count and 24 months on the having weapons while under disability count, to be served concurrently with the sentence on the felonious assault count. The trial court also imposed three years' mandatory post release control and costs.

{¶19} Robertson appealed, raising the following two assignments of error for review:

Assignment of Error No. 1. The trial court erred in admitting testimony by the investigating detective as to statements made to him by the alleged victim.

Assignment of Error No. 2. The trial court erred in entering a conviction which was against the manifest weight of the evidence.

**Law and Analysis**

**Admissibility of Victim's Statements to Detective**

{¶20} In his first assignment of error, Robertson argues that the trial court erred in admitting Detective Reese's testimony regarding "information he received from Talley," specifically, Talley's statements to Detective Reese (1) that he and Robertson had been incarcerated together in a federal prison; (2) that Robertson had told Talley that he had been hired to kill him; and (3) regarding Talley's encounter with Robertson in a shopping plaza a month before the shooting when Robertson showed Talley a firearm with an extended magazine and Talley ran into a cell phone store fearing for his safety. Robertson contends that this testimony

was inadmissible hearsay and that the admission of such evidence, over Robertson's objection, was prejudicial.

{¶21} Whether to admit evidence lies within the broad discretion of a trial court. A reviewing court will not reverse a trial court's evidentiary decisions in the absence of an abuse of discretion that has resulted in material prejudice to the defendant. *State v. Rucker*, 8th Dist. Cuyahoga No. 105628, 2018-Ohio-1832, ¶ 27, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. A trial court abuses its discretion when it acts unreasonably, arbitrarily or unconscionably. *Noling* at ¶ 43; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶22} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). If a statement is offered for a purpose other than to prove the truth of the matter asserted, it is not hearsay. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118, citing *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). Hearsay is inadmissible unless it falls within a specific exception to the hearsay rule. Evid.R. 802.

{¶23} Law enforcement officers may testify regarding out-of-court statements for the nonhearsay purpose of explaining the next investigatory step. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186; *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Such testimony is admissible if it satisfies three requirements: (1) the conduct to be explained is relevant, equivocal and contemporaneous with the statements; (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice; and (3) the statements do not connect the accused with the crime charged. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

{¶24} Although we find that Detective Reese's testimony regarding Talley's statements that he and Robertson had been incarcerated together in a federal prison satisfies these requirements — offered for the purpose of explaining what led Detective Reese to contact his federal probation office contacts and how he thereafter determined that "Too Too" (depicted in the photograph he received from Talley) was Robertson — we believe his testimony regarding what Talley told him about his encounter with Robertson at the shopping plaza likely goes beyond what is permissible in describing the steps in an investigation. Given the other evidence presented, there was no need for the state to offer this testimony by Detective Reese to explain his investigation.

{¶25} Nevertheless, even assuming the trial judge erred in admitting the testimony, we do not find the error to be prejudicial. Talley identified Robertson as the person who shot him during his trial testimony, had previously identified him (by his nickname "Too Too") as the shooter when speaking with the responding officers and had provided a photo of Robertson, whom he identified as the shooter, to the investigating detective. During his post-arrest interview — which the state admitted without objection — Robertson told Detective Reese that Talley had accused him of accepting money to "put out a hit" on Talley. Based on the record before us, in view of the other evidence presented, we find no reasonable possibility that the improper testimony by Detective Reese contributed to Robertson's convictions. The admission of this testimony was, therefore, harmless beyond a reasonable doubt. *State v. Clinton*, Slip No. 2017-Ohio-9423, ¶ 136-138; *McKelton* at ¶ 190. Robertson's first assignment of error is overruled.

**Manifest Weight of the Evidence**

**{¶26}** In his second assignment of error, Robertson challenges his convictions as being against the manifest weight of the evidence. A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Calhoun,* 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶27}** "The use of the word 'manifest' means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact." *State v. Battiste,* 8th Dist Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 19, citing *DeHass* at paragraph one of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in

which the evidence weighs heavily against the conviction.'"  *Thompkins* at 387, quoting *Martin* at 175.

{¶28} This case came down to the testimony of Talley and whether the trial court properly found Talley to be a credible witness.  Robertson argues that  Talley's testimony was not credible and could not be relied upon to support his convictions because (1) Talley was a convicted felon, (2) there were no other witnesses or physical evidence corroborating Talley's testimony, (3) Talley testified that he was looking down before the shooting began and "balled up" as the shots were being fired, and (4) immediately prior to trial, in an attempt to avoid testifying by asserting his Fifth Amendment rights, Talley stated on the record that he did not see who shot him.

{¶29} Simply because a witness has a  criminal record does not mean his or her testimony cannot be relied upon to convict a defendant.  *See, e.g., State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 44; *see also State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 130 (credibility of witnesses in murder case was left to the jury where witnesses admitted they were high on crack cocaine the day of the murder and had "extensive criminal histories"); *State v. Medezma-Palomo*, 8th Dist. Cuyahoga No. 88711, 2007-Ohio-5723, ¶ 36-37 (fact that several of the state's witnesses had criminal records did not preclude the jury from finding their testimony to be credible); *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716 and 11AP-766, 2012-Ohio-2989, ¶ 41 (fact that witnesses had criminal records did not render their testimony unreliable; jury could weigh information regarding witnesses' criminal histories in determining how much credibility to give their testimony)._

{¶30} A factfinder may believe and convict a defendant based upon the testimony of a single eyewitness, including the victim.  *See, e.g., State v. Martin*, 8th Dist. Cuyahoga No.

90722, 2008-Ohio-5263, ¶ 32-42 (rejecting argument that convictions were against the manifest weight of the evidence because the victim, who was the sole eyewitness to the events, gave conflicting information to police officers and there was no corroborating evidence, such as other witnesses or physical evidence); *see also State v. Payne*, 8th Dist. Cuyahoga No. 105965, 2018-Ohio-1399, ¶ 24, 29-30; *State v. Mansour*, 11th Dist. Trumbull No. 2011-T-0013, 2011-Ohio-5438, ¶ 17-29. Likewise, a defendant is not entitled to reversal on manifest weight grounds merely because a witness may have made inconsistent statements. *See, e.g., State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11.

{¶31} "The decision whether, and to what extent, to believe the testimony of a witness is 'within the peculiar competence of the factfinder, who has seen and heard the witness'" — in this case, the trial judge. *Nitsche* at ¶ 45, quoting *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. "'When an appellant attacks the credibility of a witness on manifest weight grounds, it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact which accepted the testimony of such witness unless the reviewing court finds that a reasonable [fact finder] could not find the testimony of the witness to be credible.'" *State v. Brown*, 10th Dist. Franklin No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. Franklin No. 96APA04-511, 1997 Ohio App. LEXIS 416, 25 (Feb. 6, 1997).

{¶32} Likewise, a lack of physical evidence, standing alone, does not render a defendant's conviction against the manifest weight of the evidence. *See, e.g., Payne* at ¶ 30; *see also State v. Lundy*, 8th Dist. Cuyahoga No. 90229, 2008-Ohio-3359, ¶ 12 (physical evidence was not required to corroborate witness' testimony; "[p]hysical evidence merely would have bolstered the direct testimony of the state's witnesses"); *State v. Jackson*, 7th Dist. Jefferson No.

09 JE 13, 2009-Ohio-6407, ¶ 15-16 (conviction based on victim's testimony identifying defendant as perpetrator was not against the manifest weight of the evidence despite the lack of physical evidence).

**{¶33}** In this case, a victim testified who knew the defendant and clearly and unequivocally identified the defendant during his trial testimony as the person who had shot him. Although Talley stated shortly before trial, before he had been placed under oath, that he wished to "plead the Fifth" and that he "didn't see who shot [him],"[2] after the trial judge explained that he could not avoid testifying on that basis, Talley did, in fact, testify, answering each of the questions posed to him by the state and defense counsel. Talley explained that he had previously attempted to assert his Fifth Amendment right not to testify because he "just wanted it

---

[2] Before trial, the trial judge engaged in the following exchange with Tally:

TALLEY:    Don't know why they brought me back to testify about the incident here.

THE COURT: Allegedly Mr. Robertson feloniously assaulted you.

TALLEY: I told the prosecutor and I told the detective.    I'm like, I ain't going to court.

THE COURT: That you what?

TALLEY: That I didn't see who shot me, so I don't know why they keep bringing me back.

THE COURT: There may be more evidence than that.

TALLEY: Well, I don't know.

THE COURT: Maybe—    there may be more evidence than just your eyewitness testimony.

TALLEY: Why do they need me for then?

* * *

THE COURT: It's not a question why they need you. The question is — you're here to testify. It's not your choice to testify or not. * * * They're going to put you on the stand and swear you in.

TALLEY: That's when I say I'll just plead the Fifth. * * * That's why I'll plead the Fifth. I don't want to talk it over.

THE COURT: You don't have the Fifth. You're not charged with a crime.

to be over with" and that someone had brought him a letter from Robertson threatening his family. He testified that when he had previously told the trial judge he did not see who shot him, it was not true and that he had, in fact, seen Robertson shoot him.

**{¶34}** Talley had otherwise consistently identified Robertson as the shooter prior to trial. Talley informed the responding police officers when they interviewed him at the hospital shortly after the shooting that "Too Too" had shot him. He also provided a photo of "Too Too" (later identified as Robertson) to Detective Reese, identifying him as the shooter, when Detective Reese interviewed Talley approximately a week after the shooting. Further, while there was no physical evidence connecting Robertson to the shooting, Detective Reese explained why such evidence may not be available.

**{¶35}** In this case, the trial judge had sufficient information upon which to evaluate Talley's credibility. Talley answered numerous questions regarding his criminal background during his direct examination. The trial judge heard Talley admit that he had a criminal record and was serving both state and federal prison sentences at the time he testified. He was subject to thorough cross-examination by defense counsel regarding his reluctance to testify prior to trial, his claim, that he wished to "plead the Fifth" and "didn't see who shot [him]," and the version of events to which he testified at trial. The trial judge was able to evaluate credibility of Talley (and the other witnesses) for himself and was "free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Malone*, 8th Dist. Cuyahoga No. 101305, 2015-Ohio-2150, ¶ 29, citing *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶36}** After reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot say that the trier of fact

clearly lost its way and created such a manifest miscarriage of justice that Robertson's convictions were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Accordingly, Robertson's second assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR