[Cite as *State v. Brooks*, 2019-Ohio-4060.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107977 |
| v. | : | |
| ULIOUS BROOKS, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 3, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-630496-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christine M. Vacha, Assistant Prosecuting Attorney, *for appellee.*

Thomas Rein, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Ulious Brooks ("Brooks"), appeals his conviction for felonious assault. For the reasons set forth below, we affirm.

{¶ 2} In July 2018, Brooks was charged with two counts of felonious assault.[1] After several pretrial hearings, Brooks waived his right to a jury trial and a bench trial ensued. The parties stipulated to Brooks's prior convictions by way of certified journal entries.

{¶ 3} Through the testimonies of two state witnesses, the following was established. F.L.[2] testified that she and Brooks are cousins, the offspring of two sisters. On July 7, 2018, F.L. went to her aunt's apartment, where Brooks was living, to give her an update on F.L.'s sister's condition. F.L. testified that before she decided to go to her aunt's apartment, she asked if Brooks was at home and was told he was not. F.L. explained that because she was transgender, Brooks did not like her and was always saying: "[K]eep him away from me." F.L. stated she would not have gone if she had known Brooks would be home.

{¶ 4} F.L. testified that while she was sitting on the bed talking with her aunt, she was stabbed in the back. F.L. stated she turned, saw it was Brooks, and tried to wrestle the knife away, but Brooks stabbed her a second time. F.L. immediately ran out of her aunt's apartment and into the hallway in an attempt to get help. F.L. knocked on several doors before a neighbor answered and called for emergency assistance.

---

[1] Notices of prior conviction and repeat violent offender specifications were attached to each count.

[2] The victim identifies as transgender and will be referred throughout by initials.

{¶ 5} F.L. testified she began to feel weak because she was losing a lot of blood, so she returned to her aunt's apartment, laid faced down on the kitchen floor, and waited for EMS to arrive. F.L. testified that while she was laying on the floor, Brooks placed a towel on her back to slow the bleeding. Brooks told her he was sorry and asked her not to tell the police that he stabbed her, but instead should say that she was stabbed before she came to the apartment.

{¶ 6} F.L. testified she had about two drinks and had smoked marijuana before arriving at her aunt's apartment. F.L. stated that she might also have used drugs before arriving, but maintained she was not intoxicated. In addition, F.L. acknowledged that she had three felony convictions and that she discovered the morning of trial that there was an outstanding warrant for her arrest.

{¶ 7} Thomas Hinkle ("Officer Hinkle"), of the Cuyahoga County Metropolitan Housing Authority Police Department, testified that when he responded to the scene, he observed F.L. on the floor moaning and that she kept saying: "[Brooks] stabbed me, [Brooks] stabbed me." Officer Hinkle testified that Brooks indicated he was doing first aid on F.L., who had been stabbed prior to arriving at the apartment.

{¶ 8} Officer Hinkle testified that he observed blood stains on the front door jams of the apartment and also on the adjacent walls. Office Hinkle testified that F.L. was transported to the hospital by EMS and Brooks was taken into custody by the Cleveland Police Department. A bloodied towel and a knife were collected from the scene.

{¶ 9} After the state rested, Brooks moved for a judgment of acquittal on both counts. The trial court denied the motion. Brooks rested without calling any witnesses. He then renewed his Crim.R. 29 motion. Once again, the trial court denied the motion. The trial court found Brooks guilty of one of the two counts of felonious assault, with the attached specifications. The trial court sentenced Brooks to four years in prison and imposed three years of mandatory postrelease control.

{¶ 10} Brooks now appeals, assigning the following three errors for review:

### Assignment of Error No. 1

The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29 and the charge was not supported by sufficient evidence.

### Assignment of Error No. 2

[Brooks's] conviction is against the manifest weight of the evidence.

### Assignment of Error No. 3

The trial court erred by ordering [Brooks] to pay court costs in the sentencing journal entry.

### Sufficiency of the Evidence

{¶ 11} In the first assignment of error, Brooks argues his motion for judgment of acquittal should have been granted because his conviction was not supported by sufficient evidence.

{¶ 12} Crim.R. 29(A), which governs motions for acquittal, states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶ 13} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} In the instant case, the trial court found Brooks guilty of felonious assault in violation of R.C. 2903.11(A)(1) after finding that Brooks knowingly caused "serious physical harm" to another.

{¶ 15} At trial, during direct examination of F.L., the following exchange took place:

> [STATE]: When you arrived at your aunt's house, what happened? Just kind of walk us through that night.
>
> [F.L.]: Okay. I was sitting on her bed, and as I was telling her the story of what — the reason why I had came over, what was going on with my sister, I felt [Brooks] stab me in my back. And that's when I looked back and I seen it was him, and so I tried to grab the knife from him. And we were tussling and somehow I got on the ground and he stabbed me again. And then, at that point, I got up and I ran into the hallway, to the other apartment. I was knocking on the neighbor's door and stuff asking for help because his mother didn't want to call the ambulance

for me, for some odd reason. And the guy next door did finally call the ambulance for me.

[STATE]: All right. So is it fair to say that the first time you saw your cousin was when you turned around immediately after you were stabbed?

[F.L.]: Yes.

[STATE] Okay. Do you remember him saying anything to you before stabbing you?

[F.L.]: No, he didn't say anything before he first stabbed me. But when he first stabbed me, I asked him, like, why would you — well, not when he started stabbing me, but as I'm on the ground, I was asking him, why would you stab me? And he was like, I told you I was going to get you.

[STATE]: What did you interpret that to mean when he said, I told you I was going to get you?

[F.L.]: Oh, I'm sure he thought he was going to harm me because previously we had arguments over the phone and over the Internet site because my sister and his girlfriend — her name is [S.J.] — they were into an argument. They were calling to kill on one another, so it was a big confrontation with that.

{¶ 16} Here, to establish that F.L. sustained serious physical harm, the state presented F.L.'s testimony that Brooks stabbed her in the back and that she turned and saw that it was Brooks, who had stabbed her and that she attempted to wrestle the knife away, but was stabbed again. As previously noted, Brooks and F.L. are cousins, so we would not expect her to be mistaken about his identity.

{¶ 17} Through F.L.'s testimony, the state also presented Brooks's motive for the stabbing. In addition, the state presented the testimony of Officer Hinkle, who observed F.L. laying on the floor moaning because she was stabbed and who testified that F.L. identified Brooks as the assailant.

{¶ 18} Further, the state presented evidence that F.L. had to receive medical attention for her injuries. Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5). *State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 12, citing *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24.

{¶ 19} Based on the foregoing, we conclude the state presented sufficient evidence to support Brooks's conviction for felonious assault. As a result, the trial court did not err in denying Brooks's motion for acquittal.

{¶ 20} Accordingly, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶ 21} In the second assignment of error, Brooks argues his conviction is against the manifest weight of the evidence.

{¶ 22} Analyzing a claim under the manifest weight standard requires us to "review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]" *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} We are required to give "due deference" to the factfinder's conclusions because "the demeanor of witnesses, the manner of their responses, and

many other factors observable by [the factfinder] * * * simply are not available to an appellate court on review." *State v. Vicario*, 8th Dist. Cuyahoga No. 106373, 2018-Ohio-4217, ¶ 9, citing *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 58, citing *Thompkins*; *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum*, 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990).

{¶ 24} As previously noted, F.L. acknowledged that she had three felony convictions and indicated that she had discovered the day of trial that there was an outstanding warrant for her arrest. As a consequence of F.L.'s criminal record, Brooks broadly argues that F.L.'s testimony should not have been relied on to convict him of felonious assault.

{¶ 25} Recently, in *State v. Robertson*, 8th Dist. Cuyahoga No. 106279, 2018-Ohio-2934, we stated:

> Simply because a witness has a criminal record does not mean his or her testimony cannot be relied upon to convict a defendant. *See, e.g.*, *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 44; *see also State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 130 (credibility of witnesses in murder case was left to the jury where witnesses admitted they were high on crack cocaine the day of the murder and had "extensive criminal histories"); *State v. Medezma-Palomo*, 8th Dist. Cuyahoga No. 88711, 2007-Ohio-5723, ¶ 36-37 (fact that several of the state's witnesses had criminal records did not preclude the jury from finding their testimony to be credible); *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716 and 11AP-766, 2012-Ohio-2989, ¶ 41 (fact that witnesses had criminal records did not render their testimony unreliable; jury could weigh information regarding witnesses' criminal histories in determining how much credibility to give their testimony).

*Id.* at ¶ 29.

{¶ 26} Furthermore, the trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 48, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *Id.* at ¶ 48, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 27} In the instant case, we cannot say that the trial court lost its way simply because it chose to believe F.L.'s testimony. The trial court was able to assess her credibility despite her criminal history. As a result, we conclude Brooks's conviction is not against the manifest weight of the evidence.

{¶ 28} Accordingly, the second assignment of error is overruled.

### Imposition of Court Costs

{¶ 29} In the third assignment of error, Brooks contends that the trial court erred by imposing court costs because it failed to advise him of court costs at sentencing.

{¶ 30} The state concedes there is merit to Brooks's contention and cites *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, proposing that this court remand for the limited purpose of allowing Brooks to seek a waiver of the payment of court costs.

{¶ 31} Prior to the Ohio Supreme Court's decision in *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, we were required to do exactly what the state proposes. However, under *Beasley*, we no longer need to remand to the trial court to hold a sentencing hearing for Brooks to seek a waiver of the payment of court costs. Now, Brooks can file a motion on his own to move for the waiver of costs. *See State v. Gooden*, 8th Dist. Cuyahoga No. 107691, 2019-Ohio-2917, ¶ 27, citing *Beasley* at ¶ 267.

{¶ 32} Accordingly, the third assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR